IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AXIS SURPLUS INSURANCE CO.,

    Plaintiff,

v.

LEBANON HARDBOARD, LLC,

    Defendant.

No. CV 07-292-MO

AMENDED OPINION AND ORDER

**MOSMAN, J.,**

Plaintiff AXIS Surplus Insurance Co. ("AXIS") filed for summary judgment on its declaratory judgment action to determine whether it owes coverage to defendant Lebanon Hardboard, LLC ("Lebanon Hardboard") for a fire that destroyed a building in the process of being deconstructed. The principal issue is whether the building really was a "building" within the terms of the insurance policy, or should be classified as personal property because it was in the process of being deconstructed. For the reasons discussed below, I find the structure was a building and therefore GRANT summary judgment.

BACKGROUND

The following facts are undisputed. Lebanon Hardboard is in the industrial development, wood waste, and scrap business. In November 2005, it purchased an industrial complex in Lebanon, Oregon, and took out an insurance policy ("the policy") with AXIS for several buildings on the premises. Section A of the policy provided in pertinent part:

A.     We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations . . . .
    1.     Covered Property . . . means the type of property described in this Section . . . if a Limit of Insurance is shown in the Declarations for that type of

property.
    a.    Building, meaning the building or structure described in the Declarations . . . .
    b.    Your Business Personal Property located in or on the building described in the Declarations or in the open . . . within 100 feet of the described premises . . . .

The declarations page originally listed six buildings, including a Former Production Building ("FPB") that stood approximately 50 feet wide by 300 feet long. At least a portion of the FPB was within 100 feet of other "Covered Properties." On March 25, 2006, Lebanon Hardboard removed the FPB from the declarations page, and transferred the insurance previously secured for the FPB to two of the five buildings remaining on the declarations page. Lebanon Hardboard also decided to deconstruct the FPB, a process that involved disassembling it to maximize recovery of salvage materials. In this case, the materials to be salvaged included the FPB's wood beams, machinery, and other marketable raw materials. On September 21, 2006, a contractor was using a cutting torch on the FPB's roof and a fire broke out. The entire FPB was destroyed, and Lebanon Hardboard filed a claim with AXIS to recover the value of the wood beams and other raw materials. Following a timely investigation of Lebanon Hardboard's claim, AXIS denied coverage and filed a declaratory judgment action and later a motion for summary judgment with this Court.

## STANDARD OF REVIEW

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)). The court views the record in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the movant initially shows that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings but must respond with evidence setting "forth specific facts showing that there is a

genuine issue for trial." Fed. R. Civ. P. 56(e). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks and citation omitted).

DISCUSSION

There is no coverage for the FPB as a "building" under Section A(1)(a) of the policy because Lebanon Hardboard removed the FPB as a "Covered Property" almost six months before the fire. If Lebanon Hardboard is entitled to any coverage, therefore, it must be under the business personal property provision of Section A(1)(b). And if the FPB is covered under the business personal property provision, it follows that the FPB must no longer have qualified as a "building" at the time of the fire.

Lebanon Hardboard acknowledges there is a rebuttable presumption that a building or similar structure is real property, and the party asserting that a building or similar structure is personal property bears the burden of proving that assertion. *Pepin v. City of North Bend*, 198 F. Supp. 644, 646 (D. Or. 1961). It describes in detail the FPB's state of deconstruction,[1] and argues that although the building was still standing at the time of the fire, the deconstruction was "in its final stages," and the FPB no longer qualified as a building. AXIS, on the other hand, contends that the FPB could not be considered anything other than a building at the time of the fire.

Both parties submit that Oregon courts have not adopted a definition of "building" in the insurance context, so they look instead to a recent Oregon Tax Court case that adopted the definition from *Webster's Dictionary*.[2] *See Trendwest Resorts, Inc. v. Dep't of Revenue,* 18 Or.

---

[1] For example, the electric system, restrooms, and steam pipes had been disabled; there was no heat; the roof was full of holes; many window coverings had been removed; and holes large enough for vehicles to drive through had been cut in two walls.

[2] The *Trendwest* definition of a "building" reads as follows:

Tax 187 (Or. T.C. 2005). I agree with AXIS that under this definition or any common understanding of the term "building," the FPB was a building at the time of the fire.

Lebanon Hardboard contests this characterization of the FPB, and relies largely on *Woodruff v. Se. Fire Ins. Co.*, 426 F.2d 555 (5th Cir. 1970) for the proposition that the FPB was business personal property, and not a building, when it was destroyed. In *Woodruff*, the court held that a house destroyed by fire while in the process of being dismantled for reconstruction on another location was not covered under the homeowners' insurance policy. *Id.* at 562. At the time of the fire, the Woodruffs had sold and conveyed their property to the local Board of Education, but had reserved temporary possession and a limited right to remove their home from the property. *Id.* at 560. The court described the deconstruction process as "caus[ing] the structure to cease to exist as a part of the premises or real property and to become personalty, no more than building materials, albeit retaining the outward hull or form of a building." *Id.* at 562.

Lebanon Hardwood argues that the FPB, too, was merely a pile of building materials—in this case, business personal property—at the time of the fire. But pulling this dicta out of context misses two important points: First, the Woodruffs had purchased a "Homeowner's Policy" insuring the structure as a *dwelling*, not just a *building*. The court was therefore not attempting to create a comprehensive definition of "building" that could apply to all parties and all situations; instead, it was explaining how the very act of demolition had long since rendered the structure no longer usable as a *dwelling*. In this case, by contrast, the policy originally provided coverage for a *building*, not a *dwelling*, and the deconstruction had not turned the FPB into

---

> a constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy.

18 Or. Tax at 192 (internal quotation marks and citation omitted).

PAGE 4 - OPINION AND ORDER

something other than a building. In fact, Lebanon Hardboard admits the FPB was already in a state of serious disrepair and out of compliance with all modern building codes when it bought the industrial complex and before it began the deconstruction process. Yet Lebanon Hardboard still originally insured the FPB as a building.

Second, the court concluded that because the Woodruffs had insured the structure as a *dwelling*, their "limited interest in the structure as it stood at the time of the fire was not what the insurance company had contracted to insure." *Id.* at 562. This same principle is even more pronounced here. Lebanon Hardboard had actually *deleted coverage* and removed the FPB as a piece of "Covered Property" under the policy before the fire broke out. At that point, AXIS was no longer contracted to insure the FPB at all.

Nonetheless, Lebanon Hardboard makes two additional arguments in an attempt to secure coverage under the policy's business personal property provisions, both of which fail. First, Lebanon Hardboard points out that the terms of the policy do not require it to specifically identify the business personal property that is covered; the policy would cover machinery Lebanon Hardboard purchased and brought into or within 100 feet of a "Covered Property," for example, without any notice to AXIS. Lebanon Hardboard is correct. But the fact remains that the FPB was still a building at the time it was destroyed, and a building cannot be shoehorned into coverage under the policy's business personal property provision.

Second, Lebanon Hardboard argues it provided notice to AXIS's managing agent, Crump Insurance, that it intended to treat the FPB as business personal property beginning in March of 2006 when it deleted the FPB from the policy's declaration as a "Covered Property." But neither Lebanon Hardboard's intent nor its prior notice to AXIS can transform what is a building into something other than a building. Sometimes, things really are as simple as they appear.

CONCLUSION

The FPB was a building at the time it was destroyed by fire. Because it was removed as a "Covered Property" from the policy almost six months before the fire, there is no coverage under the policy's building coverage terms. And because it was a building at the time of the fire, there is also no coverage under the policy's business personal property terms.[3] Based on the foregoing, AXIS's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

DATED this __5th__ day of November, 2007.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

---

[3] Lebanon Hardboard contends in both its Answer and its Opposition to Summary Judgment that it is entitled to coverage under the policy for debris removal, for the damaged pipes running from the FPB to buildings still listed in the policy's declarations page, and for the conveyor belt left in the open outside of the FPB. Based on the language of the claims in the Complaint for Declaratory Judgment, I find those issues are not part of this action, which focuses instead on whether Lebanon Hardboard is entitled to recovery for the FPB itself. I emphasize, however, that AXIS is bound by the representation in its Reply that it will work with Lebanon Hardboard to determine whether coverage exists for these items.