IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AXIS SURPLUS INSURANCE CO.,

        Plaintiff,

    v.

LEBANON HARDBOARD, LLC,

        Defendant.

No. CV 07-292-MO

OPINION AND ORDER

**MOSMAN, J.,**

    On November 12, 2008, this court entered final judgment in this matter. Currently before the court is defendant Lebanon Hardboard's ("Lebanon") Motion for Attorney Fees and Related Nontaxable Expenses (#105). Plaintiff Axis Surplus ("Axis") opposes Lebanon's motion (#120). For the reasons discussed below, I GRANT in part and DENY in part the motion. I grant attorney fees and related nontaxable expenses pursuant to Federal Rule of Civil Procedure 54(d)(2) in the amount of $98,627.57.

## BACKGROUND

    This suit arose out of an insurance coverage dispute. In November 2005, Lebanon purchased an insurance policy from Axis for several industrial buildings. On March 26, 2006,

PAGE 1 - OPINION AND ORDER

Lebanon removed one of the buildings, now called the Former Production Building, from the list of covered properties. On September 21, 2006, a fire broke out and destroyed the Former Production Building. Lebanon sought, among other things, to have the Former Production Building covered as business personal property. Following an investigation of Lebanon's claim, Axis denied insurance coverage. Axis filed suit February 28, 2007, seeking declaratory judgment that the building was not insured under either building or business personal property coverage. (Pl.'s Compl. (#1) ¶¶ 12-15.) Lebanon filed counterclaims against Axis, alleging: (1) breach of contract for business personal property losses, including salvageable timber and metals, call plates, light fixtures, and a conveyor; (2) breach of contract for building property losses of a trestle cluster of pipes; and (3) breach of contract for debris removal costs and expenses. (Def.'s Answer (#9) ¶¶ 40-45.)

On October 25, 2007, this court granted Axis' Motion for Summary Judgment (#11) as to all claims except the conveyor, trestle cluster of pipes, and debris removal costs, finding that there was no coverage. The court then entered judgment in favor of Axis, which was a clerical error as the three remaining claims for the conveyor, trestle cluster of pipes, and debris removal costs were still pending. Lebanon moved to vacate the judgment and for court-directed mediation (#41), which was opposed by Axis (#46). The court granted Lebanon's Motion to Vacate Judgment (#48). The court declined to order court-directed mediation, but instructed the parties to engage in a good faith effort to resolve the remaining claims for coverage (#48). Mediation efforts failed.

The parties proceeded to trial on the counterclaims related to the conveyor, trestle cluster of pipes, and debris removal costs. After a one day bench trial on August 13, 2008, this court

PAGE 2 - OPINION AND ORDER

found: (1) the conveyor was covered in the amount of $6,000; (2) the trestle cluster of pipes was covered in the amount of $2,500; and (3) the fire debris removal was not covered. In short, Lebanon was entitled to a total of $8,500 worth of coverage, plus interest at the rate of 9% per annum as provided by Oregon law from the date of the judgment. (Final J. (#104) 1-2.)

After the trial, the parties each submitted proposed Record of Proceedings and Rulings. (## 95, 97). This court declined to adopt either Record of Proceedings and Rulings, and found that neither party was the prevailing party (#103). The court then adopted Axis' revised Form of Judgment (#104). Because the court found that Lebanon was not entitled to recover for salvageable timber ($170,015) and metals ($4,000), call plates ($5,900), light fixtures ($1,000), and debris removal ($13,701), Axis was not liable for a total of $194,616.[1] Axis was liable for coverage in the amount of $8,500 for the conveyor and trestle cluster of pipes. Lebanon then filed its Motion for Attorney Fees and Nontaxable Expenses (#105), seeking $292,936.50 in attorney fees and $982.57 in nontaxable expenses.

## DISCUSSION

Lebanon seeks attorney fees under ORS 742.06(1), which reads in relevant part:

> (1) [I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought . . . upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

There is no dispute that Axis never made any tender in this case, so that any recovery by Lebanon necessarily exceeds the (non)tender. Axis makes three arguments why no, or little, should be

---

[1] The insurance policy itself was limited to $100,000 worth of coverage.

PAGE 3 - OPINION AND ORDER

awarded here: (1) Lebanon did not recover a money judgment; (2) Lebanon's failure to cooperate caused more than six months to pass without any chance at resolution, and therefore defeats any equitable claim to fees by Lebanon; and (3) the amount is excessive in light of the outcome and other factors. I will analyze each in turn.

I.    **Lebanon Recovered a Money Judgment**

While the statute does not speak in terms of money judgments, plaintiff cites *McGraw v. Gwinner*, 282 Or. 393, 400; 578 P.2d 1250 (1978), for the proposition that the insured is not entitled to attorney fees unless a money judgment is obtained. Defendant, also citing *McGraw*, focuses on the language that the insured "emerge[] with a money 'recovery' in his favor" greater than any tender.

The relevant language in the judgment first declares coverage for the conveyor (para. 2) or the trestle cluster (para. 3), and then states that Lebanon "recover from AXIS Surplus the sum of [$6000 for the conveyor and $2500 for the trestle cluster], with interest thereon." While this language was not precisely the language Lebanon sought to have in the judgment, it seems beyond cavil that it is, on its own terms, a judgment that provides for a money recovery in a certain amount in favor of Lebanon against Axis. And since even a dollar of recovery would have exceeded the nonexistent tender, the mandatory fee shifting provision is triggered here.

II.   **The Lack of Cooperation**

Axis contends Lebanon's pretrial conduct disqualifies it from recovery because it made it difficult for Axis to evaluate all the claims. While it was able to evaluate the claim for breach of contract on business personal property, it argues that it had to wait until trial in August 2008 to learn the basis for the claims concerning the conveyor, the trestle cluster of pipes, and debris

removal. Because Axis could not evaluate these claims, it argues that it cannot be faulted for not making any tender, and therefore should not be held to pay attorney fees.

Lebanon's response is two-fold. First, it contends that it did in fact cooperate, by providing a proof of loss and related documents, and by supplementing that information later, such as during mediation. Second, it takes the position that its cooperation is not really the issue: the statutory scheme puts some of the onus on the insurer to investigate the claim and gain, through the normal course of discovery, whatever additional information it needs to make a tender. Lebanon argues that Axis' failure to do so is its own responsibility, for which the fee shifting statute exacts a price.

Along with both parties, I agree that the underlying policy behind this fee shifting statute is "to encourage the settlement of claims and to discourage the unreasonable rejection of claims by insurers." *Heis v. Allstate Ins. Co.*, 248 Or. 636, 643-44, 436 P.2d 550 (1968). In fact, the statute not only discourages unreasonable rejection of claims, but unreasonable delays in investigating claims. And *Heis* makes clear that the insurer cannot just sit on its hands; it must actively seek the information it thinks it needs to make a decision.

There is no question that the claims upon which Lebanon eventually prevailed are late-comers to this case. They make their first appearance in April of 2007, well after the initial claims and the resulting investigation. The first real explanation of those claims comes from a letter from Mr. DeChaine (counsel for Lebanon) to Axis in May of 2007. By that time Axis had made its decision to deny coverage on the initial claims, and was poised to move for summary judgment. It is also true that Lebanon's explanations of those claims were not a model of clarity.

It was clear to the court that in some important ways the factual background for those claims was not completely clarified until testimony was given on them at trial.

Nevertheless, the statutory scheme places the burden on Axis to get the information it needs to make a decision. It failed to do so here. I might well have entertained an argument that the running of the six-month period for making a tender should not have started on these claims until April or May of 2007. I certainly would have entertained motions to compel the sort of discovery Axis needed to understand the basis for the new claims. But Axis did none of the above. Instead, it took a calculated risk and effectively denied coverage on the new claims by including them in its motion for summary judgment. In doing so, I find Axis forfeits any argument that it lacked the information it needed to make a reasonable decision on tender. There may well be cases where the conduct of an insured equitably excuses the insurer from making a tender within the six-month period. This is not such a case.

Speaking of equity, it is important to note that there are several important ways in which Axis' conduct in this case fell below the standard set by the statute. It did many of the things that led to the passage of the statute in the first place, and that continue to plague insureds today: multiple requests for the same information, lost paperwork, different agents of the insurer seeking the same information, lengthy delay in getting to the scene of a fire to investigate, insistence on particular forms for the proof of loss, and requests for inordinate details.

Even under ORS 742.061, however, an insurer can probably still engage in obstreperous behavior and delays, and come out ahead if it turns out there is no coverage. That was the calculated risk Axis played here: it eventually decided that, on the core breach of contract claim for personal property, there was no coverage. And at least as far as that claim, it turned out to

PAGE 6 - OPINION AND ORDER

be right. But the fact that Axis turned out to be wrong on the new claims exposes it to attorney fees.

**III.     Reasonable Attorney Fees**

Lawyers occasionally inhabit a world that only makes sense to them. Here, for example, Lebanon seeks almost $300,000 in attorney fees as a reward for recovering $8,500. If one factors in both sides' attorney fees, and the time and effort of various insurance company investigators and Lebanon employees, as well as court staff, it is possible that it took almost a million dollars to deliver an $8,500 judgment to Lebanon. I suppose no sane person would design such a system from scratch.

But I am not designing from scratch. Instead, ORS 20.075(1)(a)-(h) and (2)(a)-(h) set out a number of factors to consider in any case in which an award of attorney fees is authorized. I now analyze each in turn.

### The 20.075(1) Factors

**(a)     The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal**

As mentioned above, this factor favors neither party. Both sides engaged in conduct that needlessly prolonged this litigation.

**(b)     The objective reasonableness of the claims and defenses asserted by the parties**

Lebanon's core claim was that the Former Production Building, and the property inside it, were business personal property. This was always a very weak claim, but I am unwilling to say it was unreasonable to assert it. Certainly there was an element of unnecessary stubbornness in the manner that Lebanon continued to assert it past the point the court had ruled. On the other hand,

PAGE 7 - OPINION AND ORDER

Axis moved for summary judgment against the new claims and later admitted that was inappropriate. Its defense, which I find supported at least in part by the facts, is that it simply did not know much about these claims and had some difficulty learning what it needed to know. But it continued to deny coverage on these claims right to the end of the case.

In all, I think this factor is a wash in that it cuts a little both ways. Lebanon vigorously asserted a weak claim; Axis vigorously denied a strong claim. While their conduct in asserting these claims left room for improvement, the claims themselves are not unreasonable.

**(c),(d) Deterrence**

For many of the reasons I have discussed above, I find the twin factors of deterrence cut both ways.

**(e)    The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings**

Both sides were represented by attorneys that were both talented and diligent. But I find this factor favors Axis, in that Lebanon advanced its positions in ways that unnecessarily contributed to the length and cost of the case. Lebanon spent time and money advancing the idea of an Offer of Proof concerning the claims denied by summary judgment, for no discernible purpose other than to relitigate the issue. Lebanon devoted a great deal of its trial brief and pretrial submissions to the same issues it lost at summary judgment. After repeated clarifications by this court, Lebanon continued even at trial to argue for coverage on the same issues it had lost, from Opening Statement through Closing Argument. By litigating issues the court made clear had been foreclosed, Lebanon made its own and Axis' preparations more expensive in ways that were entirely unnecessary.

PAGE 8 - OPINION AND ORDER

**(f)    The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute**

For the initial period of the case, Axis was facing a weak claim and understandably took the position that it need not settle it for any significant amount. To the degree I can sort out the conflicting accounts of settlement, I find this factor neutral up through the spring of 2007. At some point, Axis learned of the new claims, and did not initially make any serious effort to settle them until after summary judgment. Both parties later participated in mediation, and Lebanon at least made some attempts at private settlement. Each complains that the offers the other made were unreasonable. While I do not know what was contained in all these offers, it would have been entirely reasonable for Axis to attempt to settle without paying anything for the initial claims. But in offering to pay something on the new claims, it would have been obligated to take into account attorney fees to some degree. On the record I have before me, I do not know whether this ever happened or not – only that Lebanon viewed the offer as unreasonably low. On the other hand, Lebanon was under some obligation to make an offer that took into account the outcome at summary judgment (discounted slightly for an expected appeal). I know a little more about one of Lebanon's offers than I do about Axis.' Its formal offer of December 12, 2007 on the merits (separate from attorney fees) seems to have been in excess of its possible recovery on the remaining claims. As far as I can tell, Axis simply never responded to that post-mediation offer.

As I have mentioned, the record I have about settlement is not clear. In no event, on the facts of this case, would this factor carry a great deal of weight. From what I can discern of the record, this factor slightly favors Lebanon.

PAGE 9 - OPINION AND ORDER

**(g)     Prevailing party status**

This factor favors neither party.

**(h)     Such other factors as the court may consider appropriate**

I will discuss other appropriate factors in the course of discussing the (2) factors below.

### The 20.075(2) Factors

**(a)     The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding, and the skill needed to perform the legal services**

This was a fairly straightforward insurance coverage case. There was certainly nothing difficult about it. To the degree it was novel that was because Lebanon was hoping to get a building covered as personal property.

Lebanon argues the case became expensive when Axis moved for summary judgment, and then went to trial. But of course Axis was well within its rights to move for summary judgment, where it gained a near-complete victory. And as near as I can tell, the case went to trial on what had become a very simple case because the parties could not agree on attorney fees. So the idea that a less than one-day court trial over a very small coverage dispute would require 258 hours (six and a half weeks of non-stop work) and almost $100,000 in fees in unsupportable. In the same way, much of the time spent pre- and post-trial seems out of proportion to the simplicity of the case.

In sum, the case was a simple court trial that lasted not much longer than many hearings. This factor cuts significantly against Lebanon.

**(b)     The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases**

This factor has no impact in this case.

**(c)     The fee customarily charged in the locality for similar legal services**

Axis is not challenging the hourly rates charged by Lebanon's attorneys.

**(d)     The amount involved in the controversy and the results obtained**

As an initial matter, it is worth noting that the relationship of the amount involved to the actual recovery is just one factor to consider among many. Case law makes clear that the results obtained do not represent some upper limit on the fee recovery, nor is the fee recovery necessarily limited to the work done on the claims that resulted in recovery. *See Hartford v. Aetna/Mt. Hood Radio*, 270 Or. 226, 527 P.2d 406 (1974). The idea is to allow those who bring relatively small claims to obtain the entire amount of the fees expended, so that insurers cannot simply make such claims too expensive to be worth pursuing. *See Barbara Parmenter Living Trust v. Lemon*, 345 Or. 334, 194 P.3d 796 (2008). That rationale has less application here, where the recovery initially sought was not small.

Another threshold issue is the question of the relatedness of the claims. Lebanon argues all of its claims are related, in the sense that they involve a common core of facts or are based on related legal theories. Axis never challenges this proposition. The concept of relatedness stems from the discussion in *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983), about related versus unrelated claims. The court in *Hensley* made clear that a plaintiff victorious only on some claims would not be likely to get a fee award for unrelated claims. It also made clear that even as to related claims on which the plaintiff did not prevail, the district court must still take into account

the degree of success obtained.  Elsewhere, Lebanon suggests that federal civil rights cases, like *Hensley*, are not applicable to this case.  And it is true that they involve a different statutory scheme, and thus are not controlling.  But the general concept of the federal civil rights statutes as to fee shifting is remarkably similar to this statute, and so I accept the proposition, codified into Oregon statutory law, that the amount involved compared to the results obtained is part of any reasonableness inquiry.  I also find the claims on which Lebanon prevailed to be related to the claims on which it did not.

A final threshold matter involves the amount in controversy.  Axis contends that Lebanon was seeking $202,486.  Lebanon argues that Rece Bly made clear in his Oral Examination Under Oath that Lebanon was only seeking $100,000.  But Mr. Bly's statement was not quite so unequivocal.  He said that if the applicable limit on personal property coverage was $100,000, he would expect to collect $100,000.  In other words, he expected to collect the maximum amount possible under the policy.  He further said that if Axis were still "on the hook" for a million dollars, the claim could be "several fold larger than that."  Lebanon Reply Memorandum on Motion for Attorney Fees, Ex. 20 at p. 109.  Certainly by the time Lebanon filed its Answer and Counterclaims, it was still seeking well in excess of $100,000.  For present purposes, I find Lebanon was originally seeking over $200,000, and that this is the proper measure of the amount involved in the controversy.

With this measure in mind, it can be seen that as a mathematical calculation, Lebanon obtained a little less than 5% of what it sought.  Presumably for this reason, Axis suggests an award of about 5% of the amount requested.

While I think the purely mathematical comparison is worth a look, it is not exactly the

PAGE 12 - OPINION AND ORDER

inquiry I am obligated to conduct. The core question involved in this factor is the degree of success obtained; that is supposed to shed light on the ultimate issue, which is, what is a reasonable fee. Here, the degree of success obtained is small when measured in either dollar terms or in terms of the portion of the case that ended in victory. It is expanded, however, by the concept of relatedness: that is, Lebanon had to put in some of the same work on the winning claims that it put into the losing claims in order to prevail on the winning claims. It is not quite fair, in other words, to suggest that 5% represents the amount of work that would be reasonable on the winning claims.

**(e)-(h)  Remaining factors**

The parties seem to agree that the remaining factors have no important bearing on this case.

## The Combination of Factors

It is possible to wander through the sixteen enumerated factors and leave by the same door you came in, without much progress. It seems the core of the fee dispute centers on two factors: whether the amount of time spent on this case was excessive in light of its simplicity, and whether the degree of success does not support the fees requested. As I earlier suggested, I find the amount of time spent on the case was excessive. I do not mean to suggest that each entry is excessive; some seem perfectly appropriate, and as to others I have no basis for judgment. But where I do have a basis for judgment, it appears a number of entries represent fees well in excess of what was necessary for such a case. In addition, some amount of time spent was simply unnecessary, such as the post-summary judgment litigation of the coverage issue Lebanon had lost.

PAGE 13 - OPINION AND ORDER

I also find the degree of success, even taking into account the relatedness of the claims, was very small.  Other than in its effort to trigger fee shifting, the fairest characterization of Lebanon's performance on the merits is that it lost.  Had the case started out as small as it ended, it is unlikely it ever would have been tried.  I also take into account, however, that Axis failed to take steps to deal separately with the winning claims in a manner that might well have obviated the need for trial, or at least for trial on the merits as opposed to a fee contest.

With all that in mind, I have determined to award fees in an amount representing approximately one-third of the amount requested.  I believe this reduction takes into account the excessive fees and the relatively minor victory.

## CONCLUSION

For the foregoing reasons, Lebanon's Motion for Attorney Fees and Related Nontaxable Expenses (#105) is GRANTED in part and DENIED in part as follows:  Lebanon is awarded attorney fees in the amount of $97,645.00 and related nontaxable expenses in the amount of $982.57, for a total award of 98,627.57.

DATED this  26th  day of February, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court